UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT LEE SIMMONS,

    Plaintiff,

v.                                Case No. 6:21-cv-743-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to apply the correct legal standards concerning his need for an assistive device. Additionally, Plaintiff asserts he is entitled to a new hearing because the ALJ assigned to adjudicate his case was unconstitutionally appointed. As the ALJ's decision was not based on substantial evidence, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1968, claimed disability beginning January 1, 2009 (Tr.156). Plaintiff obtained a tenth-grade education, and has no past relevant work experience (Tr. 62-63). Plaintiff has held a variety of short-term jobs, including chef job at Waffle House, a job at Americrown Service, and Kelley Plumbing, that did not

rise to the level of past relevant work (Tr. 93-95). Plaintiff alleged disability due to lower back problems, bilateral hand problems, history of fracture of right leg, hallucination due to drug use, hypertension, breathing problems, and left foot problems (Tr. 578). He testified that his doctor advised him that he needs a hip replacement, but he is unable to afford it (Tr. 78). He also testified that he was in the process of re-applying for Medicaid (Tr. 78). Plaintiff admits to abusing drugs and alcohol in the past, but explained that he last used in 2017-18 (Tr. 70). At the time of his latest hearing, Plaintiff lived in a house with his sixty-eight-year-old mother (Tr. 74). Plaintiff claims he is capable of caring for his own personal needs but has difficulty bending and walking (Tr. 75).

Given his alleged disability, Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 498-506, 507-512). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 156-171, 176-194). Plaintiff then requested an administrative hearing (Tr. 274). Per Plaintiff's request, the ALJ held a hearing on April 5, 2013, at which Plaintiff appeared and testified (Tr. 127-155). Following the hearing, the ALJ issued an unfavorable decision on July 11, 2013, finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 203-216). Thereafter, the Appeals Council vacated the ALJ's decision on December 17, 2014, and remanded the matter for further administrative action (Tr. 218-220). Following another administrative hearing before a same ALJ on September 2, 2015 (Tr. 121-126), that ALJ issued another unfavorable decision on March 7, 2016, finding Plaintiff not disabled and denying his claims for benefits (Tr.

224-241). Again, the Appeals Council granted review and on September 7, 2018, remanded the matter for further administrative action (Tr. 244-246). After two more hearings on February 26, 2020, and September 2, 2020 (Tr. 37-58, 59-92) (the second one "due to the extraordinary circumstances presented by the Coronavirus Disease 2019"), a new ALJ, M. Hart, issued an unfavorable decision on September 18, 2020, finding Plaintiff not disabled and denying his claims for benefits (Tr. 13-28).

In rendering the administrative decision, ALJ M. Hart concluded that Plaintiff met the insured status requirements through March 31, 2012, and had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date (Tr. 16). After conducting a hearing and reviewing the evidence of record, ALJ M. Hart determined Plaintiff had the following severe impairment: spine disorders (Tr. 16). Notwithstanding the noted impairment, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform medium work with additional limitations (Tr. 18). Specifically, the ALJ indicated:

> The claimant can lift and carry up to 50 pounds on an occasional basis and 25 pounds on a frequent basis. The claimant can sit for two hours at a time without interruption and for eight hours total during an eight-hour workday with normal breaks. He can stand for 20 minutes at a time without interruption and for four hours total during an eight-hour workday with normal breaks. He can walk for twenty minutes at a time without interruption and for four hours during an eight-hour workday with normal breaks. The claimant can frequently perform handling (defined as gross manipulation), fingering (defined as fine manipulation), feeling, and pushing or pulling with the bilateral upper extremities. The claimant can frequently operate foot controls, balance, kneel, and climb stairs, ramps,

3

ladders, or scaffolds, but only occasionally stoop, crouch, and crawl. The claimant can tolerate frequent exposure to unprotected heights and vibrations, but occasional exposure to moving mechanical parts, extreme cold, extreme heat and pulmonary irritants such as dusts, odors and fumes. The claimant can tolerate no exposure to the operation of a motor vehicle. The claimant is limited to occupations with no more than a moderate noise intensity level, as that term is defined by the Dictionary of Occupational Titles.

(Tr. 18). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Plaintiff had no past relevant work (Tr. 27). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a gate attendant, DOT 344.667-010; laundry sorter, DOT 361.687-014; and produce weigher, DOT 299.587-022 (Tr. 28). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 28). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

   II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age,

education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal

standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to apply the correct legal standards concerning his need for an assistive device. Plaintiff also asserts he is entitled to a new hearing because the ALJ assigned to adjudicate his case was unconstitutionally appointed. For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

    A.  *Assistive device*

First, Plaintiff contends that substantial evidence does not support the ALJ's finding as to Plaintiff's subjective complaints regarding the need to use a cane or walker for ambulation and balancing. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d

585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[1] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish

---

[1] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, Plaintiff argues that the ALJ failed to properly consider Plaintiff's need to use a cane and/or a walker for ambulation and balancing. During the most recent administrative hearing, Plaintiff testified that he uses a can or a walker to ambulate

and for balance when standing still (Tr. 45). According to Plaintiff, his physician prescribed his cane because his legs and back give out (Tr. 74). Plaintiff indicated that he is able to sit in a comfortable chair for about ten minutes, stand for about ten to fifteen minutes, and walk for about a quarter of a block with his walker before he needs to sit down or take a break (Tr. 71). Upon further questioning by the ALJ, Plaintiff reiterated that due to trouble with bending or walking he has had difficulty for the past five years or so taking care of his personal needs such as showering and dressing (Tr. 75-76).

The medical evidence shows that in November 2018, Sandford Kinne, D.O. diagnosed osteoarthritis of multiple joints, ordered a quad cane for "pain in right thigh," and referred Plaintiff to an orthopedic surgeon (Tr. 1128-30). Indeed, medical records spanning from 2018 through 2020 document Plaintiff's chronic low back pain, leg pain, pain that limits mobility, and falls or "almost falls" due to his right leg giving out. *See* Tr. 1189, November 23, 2018; Tr. 1183, July 2, 2019; Tr. 1235, October 3, 2019; Tr. 1164, September 28, 2019; Tr. 1122, December 26, 2019; Tr. 1291, March 10, 2020; Tr. 1307, April 27, 2020; Tr. 1996, July 2, 2020. These medical records reflect multiple diagnoses including lumbar back pain with radiculopathy affecting right lower extremity, lumbar degenerative disc disease, and degenerative joint disease of the sacroiliac joint (Tr. 1200). Consistently, the records indicate Plaintiff "has been using a walker for support with ambulation," "normally ambulatory with a walker," or uses a cane, etc. (*Id.*).

Like the emergency room and primary care records, records from treating orthopedist Todd McCall, M.D., who evaluated Plaintiff in October 2019, reflect Plaintiff "ambulates with a cane today also walks with a walker" and reported worsening pain in his lower back, hip, and left knee for approximately one year (1149).[2] Based upon examination and radiography, Dr. McCall diagnosed "avascular necrosis of bilateral hips" with "multiple points of contention that are creating arthritic pain" (Tr. 1149-50). Dr. McCall opined that "avascular necrosis will more than likely continue to create further osteoarthritis of the hip but at this time we will try … intra-articular steroid injection of the right hip (Tr. 1149-50). Per Dr. McCall's referral, Plaintiff underwent a right hip therapeutic injection on October 18, 2019 (Tr. 1152-53). Medical records after that date indicate Plaintiff needs a right hip replacement however he does not have insurance (Tr. 1296).

Objective medical evidence supports the symptoms set forth by Plaintiff at the administrative hearing and in the medical records. A July 2019 computerized tomography (CT scan) of his lumbar spine revealed diffuse broad-based bulging with central disc osteophyte complex at L5-S1; mild diffuse broad-based bulging at L4-5 and mild broad-based bulging at L3-4; and focal primary bony degenerative changes with disc degeneration disc space narrowing at L5-S1 (Tr. 1204-1205). Pelvic CT and pelvic and femur x-rays, dated October 3, 2019, revealed mild bilateral osteoarthritis

---

[2] Dr. McCall's records show that Plaintiff complained of a recent left leg injury. To that end, Plaintiff sought treatment at the emergency room on September 28, 2019, following a fall. The emergency room reveal that Plaintiff reported he "was taking a hit of cocaine last night and fell over landing on his left leg" (Tr. 1155, 1165-66).

at the hip joints with abnormal femoral heads with changes characteristic of avascular necrosis" and a "right femoral head … subchondral cystic lesion" (Tr. 1150).

At the September administrative hearing, ALJ M. Hart and Plaintiff's representative posed several hypotheticals to the VE concerning the use of an assistive device (Tr. 54-57). Specifically, ALJ M. Hart, counsel, and the VE engaged in the following exchange:

> VE: … it's my opinion you … really cannot do work at the medium level … if you've got to use [an] assistive device to ambulate.
>
> ALJ: What about at those jobs at the light level you listed?
>
> VE: At the light [INAUDIBLE] the mount, which is up to 20 pounds or wherever that job requires. I don't, and you're able to stand at the work station and use both hands without the cane, then I think you could [do] it. I … think if you could need the … cane to stand, you can't, if, it, particularly at the unskilled level, I don't think you could do the manipulation with the, you only have one hand to manipulate if you need to change the … cane to stand.
>
> ATTY: So, if you're standing at your work station, you have your right, dominate hand holding the cane for balance, you're not able to [do] the light jobs, [is] that what you're saying?
>
> VE: That's correct.
>
> ATTY: Okay, so those would be eliminated?
>
> VE: Yes, I think-
>
> ATTY: Okay.
>
> VE: - really basically … the … need for a cane to ambulate or walk, and stand, really to me indicates sedentary work.

     ATTY: Okay, and would that be the same for the walker as well?

     VE: Yes.

(Tr. 55-56).

  Following the administrative hearing, ALJ M. Hart issued an administrative decision finding Plaintiff not disabled after considering the evidence of record and both Plaintiff's and the VE's testimony during the hearing (Tr. 13-28). In the administrative decision, the ALJ acknowledged Plaintiff's testimony "that he requires the use of an assistive device for ambulation and balancing" (Tr. 21) and that he was prescribed a quad cane in November 2018 (Tr. 21). Despite these acknowledgements and despite noting that medical evidence from 2018 to 2020 record Plaintiff's use of a cane and/or a walker, the ALJ concluded that "[e]ntries from 2018 also support the conclusion that the claimant could perform a reduced range of medium work and that he does not require the use of an assistive device" (Tr. 23). Citing only to 2009 and 2015 radiography, the ALJ stated: "[o]verall the radiographic evidence supports the conclusion that the claimant is capable of medium work and does not require use of an assistive device." (Tr. 23). Unfortunately, however, substantial evidence does not support the ALJ's assessment of Plaintiff's need for a cane and/or walker.

  As an initial matter, Plaintiff's physician prescribed the cane to address Plaintiff's "pain in right thigh" at a time when he was diagnosed with osteoarthritis of multiple joints and referred him to an orthopedist for a consultation (Tr. 1130). The medical evidence, cited above, consistently shows that Plaintiff ambulated with a cane

13

and/or walker, experienced chronic back and leg pain, and reported falls and almost falls. Further, radiography documents bilateral osteoarthritis at the hip joints with abnormal femoral heads with changes characteristic of avascular necrosis and a right subchondral cystic lesion on the femoral head (Tr. 1150). While Plaintiff may not have followed through with orthopedic treatment, the record reflects he was uninsured and could not afford treatment (Tr. 78, 1296). Given the VE's testimony regarding the preclusion of work for a hypothetical individual with Plaintiff's background and limitations if such individual required the use of both hands and an assistive device, the issue of Plaintiff's use of a walker and/or a cane for ambulation and balance is central to whether Plaintiff can perform other work in the national economy and, thus, whether Plaintiff is in fact disabled. Against this backdrop, remand is warranted on the issue, as substantial evidence does not support the ALJ's decision.

Upon remand, the ALJ is directed to properly address Plaintiff's use of a cane and/or walker and the medical and other evidence relating to Plaintiff's musculoskeletal impairments and limitations. Because the medical evidence in this case spans from 2009 through 2020, the ALJ is directed to consider whether Plaintiff's use of an assistive device is medically necessary during all or any part of the relevant time period, and whether Plaintiff's limitations, and as a result his RFC, changed during this relevant time.

### B. ALJ's authority

Lastly, Plaintiff asserts a constitutional challenge to the Commissioner's authority based on the Supreme Court case *Seila Law LLC v. Consumer Financial*

*Protection Bureau*, 140 S.Ct. 2183, 2197 (2020), and argues that the statutory limitations in 42 U.S.C. § 902(a)(3) regarding the removal of the Social Security Commissioner violate the Separation of Powers Clause of the United States Constitution (Doc. 29 at 21-26). In *Seila Law*, the Supreme Court found that the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual whom the President could remove only for cause and that this limit on the President's removal powers violated the Constitution's Separation of Powers Clause. 140 S.Ct. at 2191. Relevant here, the Commissioner of Social Security, under 42 U.S.C. § 902(a)(3), is removable only for cause. Relying on *Seila Law*, Plaintiff argues the statute is unconstitutional, and "[t]he government deprived this claimant of a valid administrative adjudicatory process." (Doc. 29 at 23).

The Commissioner agrees that, to the extent 42 U.S.C. § 902(a)(3) is construed as limiting the President's authority to remove the Commissioner without cause, the removal provision is unconstitutional (*Id*. at 27, citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542 (July 8, 2021)). But, relying on *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Commissioner contends that even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the removal caused him or her harm, a showing Plaintiff cannot make (*Id*.).

Courts within the Eleventh Circuit have repeatedly held that the separation-of-powers argument is meritless in this context. *Avalos v. Comm'r of Soc. Sec.*, No. 6:21-cv-290-LHP, 2022 WL 3867386, at *3 (M.D. Fla. Aug. 30, 2022); *Concepcion v. Comm'r*

15

*of Soc. Sec.,* No. 6:20-cv-2057-EJK, 2022 WL 2292950, at *8 (M.D. Fla. Mar. 3, 2022); *Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801 (M.D. Fla. June 14, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464, at *3 (M.D. Fla. Jan. 27, 2022). Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by an Acting Commissioner of Social Security, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." 141 S.Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. It follows that Acting Commissioner Nancy Berryhill's appointment was constitutional. *Id*. at 1782.

Put differently, Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment constitutional. On July 16, 2018, Berryhill, the Acting Commissioner of Social Security at the time, ratified the appointments of all Social Security Administration ALJs and approved those appointments as her own. SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019) (citing EM-180003 REV 2, §B). As a result, here, the ALJ's appointment, as ratified, is valid. ALJ M. Hart issued a decision in Plaintiff's case on September 18, 2020, well after the ratification date of the ALJ.

Consequently, 42 U.S.C. § 902(a)(3) – the unconstitutional removal provision – did not affect Plaintiff's case. Furthermore, Plaintiff has failed to show how the unconstitutional removal restriction affected his application. Absent such a nexus, Plaintiff's argument fails. *See Collins*, 141 S. Ct. at 1789.

IV.   *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is reversed and remanded for further administrative proceedings consistent with this Order; and

2. The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 7th day of September, 2022.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record